GARY G. FORD, plaintiff in error, vs. STEPHEN R. SMITH, defendant in error.

[1.] The rule that words spoken before and at the making of a written contract merge in the contract does not apply when the words spoken themselves constitute a contract, the parties to which, are not the same as the parties to the written contract.

[2.] When a contract has been repudiated by both of the parties to it, it ceases to be the criterion for measuring the rights and liabilities between the parties to it.

[3.] Even when the work has not been done according to the contract, yet if received, and of benefit of the party receiving it, he shall pay for it a sum equal to the value of the labor and materials.

Assumpsit, from Worth county. October Term, 1858, Judge POWERS, presiding.

Smith brought an action against Ford, alleging in the first count, the making of a contract with Ford, to furnish materials and build him a house by a certain time, viz: the 18th of April, 1855, for which Ford was to pay him a certain sum; that after performing a certain amount of labor, Ford discharged him. The second and third counts are *quantum meruit* counts. The contract was proven; the circumstances attending its non-completion, and the value of the materials and labor actually furnished and performed.

Plaintiff proposed to prove that it was agreed before, at the time of, and after the making of the contract, that one R. G. Ford was to saw the lumber; defendant objected, and the Court overruled the objection.

The Court charged the jury, that plaintiff sought to recover on two counts, and explained to the jury the nature of special contracts, and the law applicable to them; and charged them that the plaintiff in this case could not recover on the special contract, but if they believed, after plaintiff had done considerable work on the house, defendant, taking advantage of his failure to comply with the contract, took possession of the house, and refused to let plaintiff complete the job, that plaintiff was entitled to as much as his labor and materials were actually worth, without regard to the special contract; that defendant could have protected himself under said contract, by refusing to take the house; if he took it voluntarily, and enjoyed it, he ought to pay what it was worth, and no more. To this charge counsel for defendant excepted.

Defendant requested the Court to charge, that if defendant was induced to take possession by the promise of Smith to go on immediately and finish the house, that such possession was no recognition of a compliance with the contract by Smith, and plaintiff cannot recover unless the evidence shows an enlargement of the time for finishing the work. The Court refused this charge, and modified the same by saying, that it was the law in a proper case, but if he went in this

way, and then refused to let Smith finish the building, it was the same as if he had gone in without Smith's consent.

Defendant also requested the Court to charge, that the failure of R. G. Ford to saw the lumber, was no excuse for Smith; which the Court did not refuse to give, but instructed the jury that the request was outside of the case.

Defendant also requested the Court to charge, that by the terms of the contract, Smith should have done the work in a workmanlike manner, by 1st of April, 1855, and that the burden of proof was on him to show an excuse for not complying with his contract. This the Court refused, but charged the jury, that Smith did not ask, and could not recover, on the special contract; that they need not consider the special contract, and it was unnecessary to give them the charge. To the charges and refusals defendant excepted.

A new trial was moved for by defendant, because,

1st. Of the admission of the evidence that R. G. Ford was to furnish the lumber.

2d. Because the Court erred in its charge to the jury; and

3d. Because the jury found contrary to law, evidence, and the right of the case.

This motion was overruled, and defendant excepted.

WARREN & WARREN, for plaintiff in error.

J. J. SCARBOROUGH, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

Was the refusal of the Court to grant a new trial, right? This is the question.

The first ground of the motion for a new trial, was, the admission of evidence to show, that one R. G. Ford was to furnish the lumber.

This evidence was, that it was verbally agreed by and between R. G. Ford, Gary G. Ford, the plaintiff in error, and

Smith, the defendant in error, that R. G. Ford should saw the lumber for the buildings, for which he was to be paid in a particular way by Gary G. Ford, who himself was to be repaid in a particular way, by Smith; and, that the words constituting the agreement, were spoken *at* and *before* the making of the building contract, as well as afterwards. That contract was in writing.

The objection to the evidence, was, that it would vary the written contract.

[1.] But R. G. Ford was not a party to the written contract. The sole parties to that, were G. G. Ford and Smith; and it was not in their power, to do any thing to affect R. G. Ford's rights arising under a contract to which, the three were parties. Therefore, the rule that words spoken before and at the time of the making of a written contract, merge in that contract, does not apply.

And, then, these same words were also spoken *after* the making of the written contract.

We think, that there is no validity in the first ground of the motion.

The next two grounds of the motion, may be reduced to one; namely this, that the Court erred in all of its charges and refusals to charge.

The part of the charge objected to, was the part in which, the jury were told, that Smith was entitled to recover so much money as his labor and materials " were actually worth, without regard to the special contract"—it being contended by the counsel for Ford, that the measure of what Smith would, in the case supposed in the charge, be entitled to recover, was the worth of the labor and materials according to the *contract price* and not their worth according to their " *actual*" value.

The proof was, that Smith had failed to comply with his part of the contract; that he had not done the job within the time stipulated; and that some of the part which he had done, was not executed according to the contract.

Ford vs. Smith.

As to so much of the job as was not executed according to the contract, it is obvious, that its value *could not* be measured by the contract price.

Again, the proof was, that Smith abandoned his count on the special contract; and that Ford also finally, repudiated that contract, insisting, that Smith had not only failed to comply with it, but had failed to comply with a second contract or promise, viz: one that, if Ford would take possession of the house in its incomplete state, he, Smith, would go on immediately, and complete the house.

The special contract, then, may be considered as having been rejected by both of the parties to it.

[2.] This being so, neither party retained the right of appealing to that contract, as the thing to govern in settling their respective rights and liabilities. Therefore, Ford did not retain the right of appealing to the contract price, for settling the value of the work done by Smith.

Consequently, the value of that work had to be ascertained in the ordinary way, viz: by a reference to its general market value. And its market value would be its " actual" value.

In *Freeman vs. Greenville Masonic Lodge*, (22 *Ga. R.* 184,) the part of the work that was done, was done according to the contract; and the employer accepted this part as done under the contract—not at all repudiating the contract, but only making a question as to what the contract was. It is, therefore, of no consequence to this case, that in that case, we thought the value of the part of the work done, was to be found by reference to the contract price. And even in that case, the effect of the decision was, to make the actual or *"real"* value of the work done, the criterion of the amount of the liability.

We think, then, the objection made to this charge, not well founded.

The first request was too absolute.

[3.] Suppose it true, that Ford went into possession of the house only on the promise of Smith to go on immediately,

and complete the work; and that this was all the "enlarge-ment of the time," that there was; and, that Smith failed to go on immediately and complete the work; and, yet, that Ford kept possession of the house, and derived a benefit from it, would he not be liable to pay Smith something for this benefit? We think that he would. In *Chappel vs. Hickey*, 2 *C. & M.* 214, Bayley B. says, " The rule is, that if the con-tract be not faithfully performed, the plaintiff shall be entitled only to recover the value of the work and materials supplied." 1 *Smith's Lead. Cas ; note to Cutter vs. Powell*, 18 ; see al-so, *Boston vs. Butler*, 7 *East.* 479, and the other cases on this point referred to in that note.

The second, and only remaining request was, to charge, that by the terms of the contract, Smith should have done the work in a workmanlike manner by the 1st of April, 1855, and that the burden of proof was on him to show an excuse for not having so done it by that time.

The ground on which the Court put its refusal to grant this request, seems to have been, that the plaintiff, Smith, had abandoned his count on the special contract. But it does not follow, that, *merely* because a party to a special contract, chooses to abandon the contract, he can set up an implied con-tract, and recover from the other party on the common counts. He must show some reason why the other party is not still entitled to hold him bound by the special contract; as, that the other party has waived a compliance with that contract; or has repudiated the contract, whilst receiving a benefit un-der it.

This request, then, was, we think legal.

It was in writing.

And the new trial Act of 1854, makes it the duty of this Court, to grant a new trial " in all cases where the presiding Judge may" " refuse to give a legal charge in the language requested, when the charge so requested is submitted in wri-ting." *Acts*, 47.

The refusal of this request, then, makes the present ground of the motion for a new trial valid, and compels this Court to order a new trial.

The third ground is, that the verdict was contrary to the evidence, and, as a new trial is to be had any way, it is best, probably, not to decide that ground.

Judgment reversed.